# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:98-CR-00322-GCM

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| MICHAEL JEROME ORR, | |
| Defendant. | |

**THIS MATTER** comes before the Court on Defendant Michael Jerome Orr's Motion to Reduce Sentence Under the First Step Act (ECF No. 68). The United States filed a response (ECF No. 71). Orr then filed a reply (ECF No. 73). The matter is now ripe for disposition. For reasons that are discussed in more detail below, the Court will deny the motion.

## I. BACKGROUND

Michael Jerome Orr is serving a 46-year prison sentence for his role in a spate of home invasions and robberies that claimed two lives. *See* ECF No. 41; ECF No. 42 at 3–4. In April 1997, Orr was among four individuals who invaded the home of Mary Sellers. The intruders took money, drugs, and a pistol.

In July 1997, Orr and others conducted another home invasion, looking for drugs and money. They pepper-sprayed the occupant, one Mr. Culp, and shot him in the torso. Culp later died from his injuries. Later that month, Orr was among a group that shot and robbed a drug dealer.

On August 4, 1997, Orr was involved in two armed robberies. He and another man got out of a stolen car and held a group of women at gunpoint. When they turned out not to have any items of value, Orr and the other man let them go. A half hour later, they held up another group,

comprised of four Mexican nationals. This time, two of them were shot after failing to produce enough money to satisfy their assailants.

Finally, on August 10, 1997, Orr and others conducted a home invasion at a drug dealer's apartment. Orr kicked in the door, yelling "Police!" and holding a Mossberg shotgun. Another individual struck the drug dealer, DeShawn Moss, in the back of the head with a "Club," a metal anti-theft steering wheel lock. Moss fell to the foot of the bed, begging for his life. Orr and his companions took the valuables in the apartment. Before leaving, Orr aimed the shotgun at the base of Moss' neck and fired, killing him.

A federal grand jury returned an eight-count indictment against Orr. ECF No. 1. Counts 1, 2, and 3 were for using and possessing a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), and aiding and abetting the same in violation of 18 U.S.C. § 2. Count 4 alleged conspiracy to use or possess a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(o). Counts 5, 6, and 7 charged possession of a firearm by an underaged person in violation of 18 U.S.C. § 922(x). Finally, Count 8 was for causing the death of a person in the course of violating § 924(c), in violation of 18 U.S.C. § 924(j).

Orr pled not guilty. Two of his co-defendants, Michael Smith and Tony Cherry, pled guilty and testified against Orr at trial. The jury convicted Orr on all three § 924(c)(1) charges, and one of the underage handgun possession counts. The government dismissed Count 6 (another underage handgun possession count). The jury hung on all the remaining counts, including the count for causing the death of a person in the course of violating § 924(c). That particular count alleged that Orr had caused the death of DeShawn Moss on August 10, 1997. The Honorable Judge Cacheris declared a mistrial on those counts, and the government subsequently dismissed them.

On March 21, 2000, Judge Cacheris imposed a 12-month sentence on the underage possession count. He then imposed "stacked" sentences for the three § 924(c) counts of 60 months, 240 months, and 240 months, to be served consecutively. In all, the aggregate sentence was 552 months, or 46 years.

Nearly 26 years later, Michael Orr filed the present motion. At the time of his motion, Orr had served 311 months. Orr argued that his sentence should be reduced under the First Step Act of 2018 because his stacked § 924(c) sentences and his age at the time of the offense constituted "extraordinary and compelling reasons" for modification.

## II. DISCUSSION

### a. Applicable Law

#### i. The First Step Act of 2018

In December 2018, Congress passed the First Step Act of 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). Although the effects of the Act ranged broadly, it did two things pertinent to this matter. First, the Act eliminated "stacked" sentences for § 924(c) offenses. And second, the Act authorized prisoners to directly petition the courts for compassionate release.

#### 1. Sentence Stacking for § 924(c) Offenses

Section 924(c) prohibits the use of a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). The penalties for violating § 924(c) are stiff. When a defendant "uses or carries a firearm" in violation of the statute, the first § 924(c) offense carries a mandatory minimum sentence of five years. *Id*. § (c)(1)(A)(i). Any additional § 924(c) offense carries a mandatory minimum sentence of 25 years.[1] *Id*. § (c)(1)(C)(i).

---

[1] At the time of Orr's conviction, the statute provided for a 20-year mandatory minimum for recidivist § 924(c) offenses. *See Deal v. United States*, 508 U.S. 129, 130 (1993); Pub. L. No. 105-386, 112 Stat. 3469 (1998) (amending the recidivist penalty).

Before the passage of the First Step Act, a defendant charged with two counts of § 924(c) faced a "stacked" sentence of 30 years, even if the defendant had never previously been convicted of violating § 924(c). But the Act eliminated "stacking," meaning that a defendant convicted of two counts of using or carrying a firearm after the Act took effect would only face two five-year sentences, not a five-year and a 25-year sentence. As things now stand, the 25-year mandatory sentence is only available to punish a recidivist § 924(c) offender. *See United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). The Act did not, however, make the change retroactive. *See* § 403(b), 132 Stat. at 5222.

### 2. Compassionate Release

The First Step Act also amended the compassionate release statute, 18 U.S.C. § 3582. Previously, that statute empowered the Bureau of Prisons—and *only* the Bureau of Prisons—to seek release for prisoners under exceptional circumstances. *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). But the First Step Act authorized prisoners to directly petition the courts for compassionate release. *Id.* at 235. Under the present form of the statute, a court can reduce a defendant's sentence if (1) "extraordinary and compelling reasons" warrant a reduction; (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission; and (3) the § 3553(a) sentencing factors merit a reduction. *See* 18 U.S.C. § 3582(c)(1)(A).

### ii. *United States v. McCoy*

Two years after the passage of the First Step Act, the Fourth Circuit clarified the application of the compassionate release statute to "stacked" § 924(c) sentences. In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the government appealed four consolidated cases. In each case, trial judges had granted sentence reductions via the compassionate release statute, finding "extraordinary and compelling reasons" in the sheer length of stacked § 924(c) sentences, and the

4

disparity between those sentences and those deemed appropriate in the First Step Act. *See id*. at 274. The government argued that (1) treating a disproportionately long sentence as "extraordinary and compelling" was not consistent with the Sentencing Commission's policy statements; and (2) Congress did not intend for sentence-stacking to constitute "extraordinary and compelling" reasons because it chose not to make the changes to § 924(c) sentencing retroactive. *Id*. at 280.

The Fourth Circuit rejected both arguments. It first concluded that there was no "applicable policy statement" from the Sentencing Commission to consider. *Id*. at 281. The *McCoy* Court specifically rejected the argument that U.S.S.G § 1B1.13 was an applicable policy statement. That provision, according to the Fourth Circuit, only applied to compassionate release motions initiated by the Bureau of Prisons. *Id.* at 282; *see also* U.S.S.G. § 1B1.13 cmt. 4.

In affirming the trial courts' decisions to consider § 924(c) stacked sentences as "extraordinary and compelling" reasons under the compassionate release statute, the Fourth Circuit outlined two key principles. First, a trial court "legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 285–86. The second principle is that a trial court reviewing a stacked § 924(c) sentence need not automatically reduce the sentence. *See id*. at 286. Instead, a trial court must make an "individualized assessment" of each defendant's sentence, comprising a "full consideration of the defendant's individual circumstances." *Id*. The *McCoy* Court approvingly noted that the trial courts had considered the defendants' relative youth (from 19 to 24 years old) at the time of their offenses, the length of the sentence that had already been served by each defendant, and the institutional records and rehabilitative steps taken by each defendant while incarcerated. *See id*.

### iii. Section 3553 Factors

The "individualized assessment" required by *McCoy* revolves around consideration of the so-called § 3553 factors. Under the compassionate release statute, courts must consider the factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable" in deciding whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A). Those factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes by the defendant; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See id.* § 3553(a).

### b. Analysis

As a reminder, the compassionate release statute permits a court to reduce a defendant's sentence if (1) "extraordinary and compelling reasons" warrant a reduction; (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission; and (3) the § 3553(a) sentencing factors merit a reduction. 18 U.S.C. § 3582(c)(1)(A). The Court now discusses each prong of the statute.

### i. Extraordinary and Compelling Reasons

Orr argues that his stacked § 924(c) sentences constitute "extraordinary and compelling reasons" supporting his argument for a sentence reduction.[2] Orr received a sentence of 552 months,

---

[2] Orr urges the Court to consider his age at the time of conviction as a standalone "extraordinary and compelling" reason justifying compassionate release. ECF No. 68 at 15–17. The Court does not believe that it is. A defendant's youth at the time of the offense is certainly relevant in a compassionate release motion, but is more appropriately considered in an analysis of the § 3553(a) factors. *See McCoy*, 981 F.3d at 286 (describing analysis of youth as part of the "defendants' individual circumstances," not an "extraordinary and compelling reason"). In any

6

Case 3:98-cr-00322-GCM   Document 74   Filed 11/22/21   Page 6 of 13

with 540 of those months attributable to the three stacked § 924(c) counts. Had Orr been convicted for the same thing today, he likely would have received an aggregate sentence of 192 months, with 180 months attributable to the § 924(c) counts. Orr's severe sentence, coupled with an "enormous disparity between that sentence and the sentence a defendant would receive today," presents exactly the extraordinary and compelling reason that existed in *McCoy*. 981 F.3d at 285.

Orr argues that his case presents especially "extraordinary and compelling" circumstances, given that (1) his § 924(c) convictions were predicated on a single drug-trafficking conspiracy; and (2) that he was convicted after the Attorney General issued guidance prohibiting that practice. *See* ECF No. 68 at 12–13. However, as Orr acknowledges, the Fourth Circuit allows multiple § 924(c) convictions to arise from a single predicate offense. *See United States v. Camps*, 32 F.3d 102, 106–09 (4th Cir. 1994). Moreover, Orr's prosecution does not appear to run afoul of the so-called "Robinson Memo," because Orr was indicted before the memo issued. *Compare* ECF No. 68-2 at 3 ("United States Attorneys' Offices are instructed *in all future cases* to adopt the practice of basing each section 924(c) in an indictment upon a separate predicate offense.") (emphasis added), *with* ECF No. 1 (recording that Orr was indicted on November 4, 1998, before the August 24, 1999 Robinson Memo). Nevertheless, the Court agrees that "extraordinary and compelling reasons" exist based on the sentence-stacking in this case.

### ii. Applicable Policy Statements

The Court next considers applicable policy statements. As the Fourth Circuit ruled in *McCoy*, there are presently no applicable policy statements to consult under 18 U.S.C. § 3582(c)(1)(A). *See* 981 F.3d at 283. The Court declines the government's invitation to consult the

---

event, the Court does not need to resolve whether youth qualifies as an "extraordinary and compelling reason," as it finds that sentence-stacking qualifies in this case.

commentary to Section 1B1.13 for "specific and limited grounds for release" under the compassionate release statute. *See* ECF No. 71 at 5 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)). That section, as the government acknowledges, is "not binding" in view of *McCoy*. And although it can sometimes provide "helpful guidance even when motions are filed by defendants," it does not appear to be particularly helpful in this case. *See McCoy*, 981 F.3d at 282 n.7.

### iii. Section 3553(a) Factors

Even when "extraordinary and compelling" reasons supporting a sentence reduction are present, compassionate release is not warranted unless the § 3553(a) factors also merit a reduction. *See id.* at 271. That is because compassionate release judgments are the "product of individualized assessments of each defendant's sentence." *Id.* at 286. The § 3553(a) factors do not support a modification of Orr's sentence.

#### 1. Nature and Circumstances of the Offense

The Court begins with the nature and circumstances of the offense. *See* 18 U.S.C. § 3553(a)(1). This factor is particularly weighty and compelling in the Court's analysis, given the extreme violence and callousness evidenced by Orr's conduct. Michael Orr was involved in the deaths of two people during home invasions. In the first home invasion, the presentence report reads, "Orr and others sprayed the resident, Mr. Culp, with pepper spray and shot him in the upper torso with a firearm." ECF No. 42 at 4. In the second home invasion, Orr and two others burst into an apartment. After the helpless inhabitant, DeShawn Moss, begged for his life, Orr fired a shotgun into the base of his neck and killed him. *Id*.

In his reply brief, Orr argues that the government wrongly "places the blame [for] the deaths of Mr. Culp and Mr. Moss squarely on Orr's shoulders." ECF No. 73 at 8. Orr contends that the blame cannot rest there, because (1) the government never charged Orr for Culp's death;

8

and (2) the jury failed to reach a verdict on the count related to DeShawn Moss' death. These arguments do not account for the expansive nature of sentencing proceedings, which permit courts to consider uncharged and even acquitted conduct in determining a sentence. *See United States v. Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009); *see also United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994) ("The defendant need not be convicted of the charges constituting relevant conduct for him still to be held accountable for them.").

Here, Judge Cacheris wholly adopted the factual findings from the presentence report. *See* ECF No. 41 at 6. The presentence report links Orr with the shooting of Mr. Culp, and identifies Orr as Mr. Moss' killer. Because Judge Cacheris found the facts as described in the presentence report, the Court may, and does, consider both killings. The extraordinarily violent and horrific nature of these crimes—including the execution-style shooting of a defenseless man with a shotgun—weighs heavily against a sentence reduction.

### 2. History and Characteristics of the Defendant

The Court turns to the history and characteristics of the defendant. Notably, Orr was 17 at the time that he committed his offenses.[3] As the Supreme Court has recognized, "[C]hildren have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking." *Miller v. Alabama*, 567 U.S. 460, 471 (2012). That makes their conduct less morally culpable, and enhances their prospects for rehabilitation. *See Graham v. Florida*, 560 U.S. 48, 68 (2010). As a result, Orr's youth at the time of the offense does weigh in favor of a sentence reduction.

---

[3] Orr turned 18 approximately a month and a half after he killed DeShawn Moss. *See* ECF No. 42 at 2, 4.

Orr is presently 42 years old. Because this age is associated with a moderate reduction in the likelihood of recidivism, this characteristic weighs slightly in favor of a sentence reduction. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf, at 26 (noting that the rearrest rate for a federal offender between 40 and 49 years is 52.8 percent, compared to 68.1 percent for offenders younger than 30).

Next, both parties agree that Orr has "significant family and community support." *See* ECF No. 71 at 6; ECF No. 68 at 21. Orr has submitted heartfelt letters from his fiancée, daughter, sister, parents, and others, expressing their support and their intention to help him if released. ECF No. 68-4. This factor also supports a sentence reduction. *See United States v. Webb*, 5 F.4th 495, 499 (4th Cir. 2021) (recording that a "strong family structure" was among a district court's reasons for reducing a sentence under the First Step Act).

Finally, Orr directs the Court to his prison record as evidence of post-sentencing rehabilitation. The government disputes the point, arguing that Orr accrued "49 disciplinary infractions during his time in the Bureau of Prisons, including several infractions involving violence." ECF No. 71 at 7. Orr responds that his last disciplinary infraction was in 2014. *See* ECF No. 68-3 at 4. Orr has completed substantial educational coursework in prison, including the completion of his GED and 15 programs on reentry skills. *Id.* at 2–4. And Orr submitted letters from other prisoners and individuals who effusively praise Orr's transformation in prison. *See* ECF No. 68-4 at 13–41. On balance, the Court agrees that this factor weighs moderately in favor of a sentence reduction. *See McCoy*, 981 F.3d at 274 (affirming trial courts' decisions to reduce sentence based in part on evidence of rehabilitation in prison).

### 3. Propriety of the Sentence

Based on the foregoing discussion, the Court must consider whether the sentence presently imposed adequately (1) reflects the seriousness of the offense; (2) promotes respect for the law; (3) provides just punishment for the offense; (4) affords adequate deterrence to criminal conduct; (5) protects the public from further crimes of the defendant; and (6) avoids unwarranted sentence disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a). The Court concludes that the present sentence is appropriate.

Thus far, every factor except for the nature and circumstances of the offense have weighed in Orr's favor. Orr was 17 at the time of the crime; he has significant family support; he appears to have made meaningful progress in prison. And yet Orr was directly responsible for the deaths of two people. He fired a shotgun shell into a prostrate man's neck after that man had been pleading for his life. He was involved in the fatal shooting of another man. He was also involved in the non-fatal shootings of three others. As discussed earlier, the Court places great weight on the "nature and circumstances of the offense," outweighing the other factors in this case. *See United States v. Pauley*, 511 F.3d 468, 476 (4th Cir. 2007) (permitting a district court to "reasonably accord significant weight to a single sentencing factor in fashioning its sentence").

The 46-year sentence that Orr received was harsh, but it was also fair, given the need for the sentence imposed to reflect the seriousness of the offense, justly punish it, and deter similar conduct. And Orr's sentence does not create an unwarranted sentence disparity with other similarly-situated defendants.[4] *See, e.g.*, *United States v. Boneshirt*, 662 F.3d 509, 511 (8th Cir.

---

[4] Orr cites cases in which courts granted compassionate release to defendants convicted of violent firearms offenses. *See* ECF No. 68 at 20–21. Those cases do not involve "similar conduct," as no one was killed by the defendants' violent acts. The Court is not persuaded by the two cases Orr cites which involve murders. *See* ECF No. 73 at 10–11 (citing *United States v.*

11

2011) (affirming a 48-year sentence for a 17-year-old who pled guilty to second-degree murder); *United States v. Portillo*, 981 F.3d 181, 182–84 (2d Cir. 2020) (upholding a 55-year sentence for a 15-year-old who "participated in the execution-style murders of four members of a rival gang"); *United States v. Sparks*, 941 F.3d 748, 750–57 (5th Cir. 2019) (affirming a 35-year sentence for a 16-year-old who participated in a carjacking, but left before two victims were shot by his companions); *see also* United States Sentencing Commission, *Sourcebook of Federal Sentencing Statistics, Table 14: Average Length of Imprisonment for Offenders in Each Criminal History Category by Primary Offense Category*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2000/table-14_0.pdf, at 31 (noting that the median sentence in FY 2000 for murder in a criminal history category of VI was 470 months).

In sum, the Court concludes that Orr has shown "extraordinary and compelling reasons" for a sentence reduction, but that an individualized assessment of the § 3553(a) factors—especially the nature and characteristics of the offense—do not warrant a reduction in his sentence. The Court also concludes that the 46-year sentence that Orr received was sufficient, but not greater than necessary, to accomplish the sentencing goals advanced by § 3553.

### III. ORDER

Michael Orr is to be commended for the progress that he has made in prison: Based on his prison record and the accounts of the people who know him, Orr has experienced substantial

---

*Wilkerson*, No. 5:96-CR-167-1H, 2021 WL 1062353, at *1 (E.D.N.C. Mar. 19, 2021) and *Brown v. United States*, Criminal Action No. ELH-00-0100, 2020 WL 7425328, at *1 (D. Md. Dec. 17, 2020). Nor is the Court persuaded by Orr's argument that a reduction is necessary to eliminate the disparity between his sentence and those of his co-defendants. *See* ECF No. 73 at 8–9. The Fourth Circuit has flatly rejected the same argument, explaining that individuals who go to trial and individuals who plead guilty are not similarly situated for sentencing purposes. *United States v. Susi*, 674 F.3d 278, 288 (4th Cir. 2012).

12

personal growth. The Court sincerely hopes that progress continues. Orr's projected release date is April 24, 2038. That day will come, and Michael Orr will have paid his debt to society. But the debt has not yet been paid.

**IT IS THEREFORE ORDERED** that the Motion to Reduce Sentence (ECF No. 68) is **DENIED**.

Signed: November 22, 2021

Graham C. Mullen
United States District Judge